UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL JUAREZ,

    Petitioner,

v.

MILLICENT WARREN,

    Respondent.

Case No. 2:13-cv-11351-LJM-MJH
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1] AND DENYING CERTIFICATE OF APPEALABILITY**

On March 5, 2010, Petitioner April Juarez, apparently under the influence of alcohol, made four attempts to run over four individuals with her car. (*See* Dkt. 1, Br. in Supp. of Pet. for Habeas ("Pet.") at 11; Dkt. 6, Resp. to Pet. for Habeas ("Resp.") at 1.) She ended up hitting a fifth individual, killing her. (Pet. at 11; Resp. at 1.) Juarez was charged with open murder and four counts of assault with intent to murder. (Pet. at 11.)

On May 26, 2010, the State offered to drop these charges in exchange for Juarez's plea of no contest to second degree murder and a single count of intent to murder listing all four of the individuals she tried to run over. (Pet. Exs. at Pg ID 53.) In open court and under oath, Juarez accepted the deal. She testified that she was 23 and had a year of college. (Pet. Exs. at 108.) The judge explained that Juarez might face life imprisonment if she pled, and then asked, "Do you understand the nature of the two charges and the maximum penalty of both of them?" (*Id.*) Juarez responded, "Yes." (Pet. Exs. at Pg ID 109.) The judge further explained that if Juarez pled, she would be giving up a number of trial related rights, including that the prosecutor would have to prove her guilt beyond a reasonable doubt. (Pet. Exs. at Pg ID 110.) The judge asked,

"Do you have any question about the nature of the charge, the rights that you have, the charges against you, the maximum penalty for the two charges, or anything else related to this case?" (Pet. Exs. Pg ID 6.) Juarez responded, "No." So advised, Juarez pled no contest to the charges of second degree murder and intent to murder. (Pet. Exs. at Pg ID 54.)

Juarez changed her mind—twice. She filed a motion to withdraw her plea, but at the evidentiary hearing on that motion, again pled no contest. The state trial court engaged in a similar colloquy, but this time specifically probed for the presence of threats or coercion:

> THE COURT: Is anyone threatening you today?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you understand the various maximum penalty, the rights that you have, the charges against you, and everything else related to this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is it your desire for the Court to continue to accept your plea of no contest?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you doing this voluntarily?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is anyone threatening or forcing you to do this?
>
> THE DEFENDANT: No.
>
> THE COURT: Have you had an adequate opportunity . . . to discuss all the matters related to this case with [your counsel] Ms. Nieuwenhuis?
>
> THE DEFENDANT: Yes. . . .
>
> THE COURT : Have there been any other promises, threats, inducements, or any other plea agreement terms other than what's already on the record that have influenced your decision to enter a plea of no contest?
>
> THE DEFENDANT: No. . . .

2

> THE COURT: (Pause) Mr. Faber, are you aware of any promises, threats, or other inducements that are not part of the record of trial or of this case that have in any way impacted Ms. Juarez's decision that you are aware of?
>
> MR. FABER: The People are aware of none, your Honor.
>
> THE COURT: Ms. Nieuwenhuis, same inquiry to you.
>
> MS. NIEUWENHUIS: I'm aware of none, your Honor, and I have discussed potential sentencing if she went to trial versus if we stayed with the plea, yes, that is correct.

(Pet. Exs. at Pg ID 62–64.) The court accepted Juarez's plea and sentenced her.

Despite twice pleading no contest, Juarez filed a pro se application for leave to appeal with the Michigan Court of Appeals. (Pet. Exs. Pg ID 21–40, Attachment D.) She raised four issues: (1) prosecutorial misconduct based on the prosecutor's repeated references to her boyfriend being a mob leader, (2) ineffective assistance of trial counsel based in part on counsel's alleged use of scare tactics to coerce her into pleading, (3) involuntary plea, and (4) ineffective assistance of appeal counsel for failing to raise the first three issues on appeal. On October 21, 2011, the state appellate court denied Juarez's delayed application for leave to appeal "for lack of merit in the grounds presented." (Pet. Exs. at Pg ID 123.)

Juarez sought leave from the Michigan Supreme Court. It denied leave because it was "not persuaded that the questions presented should be reviewed by this Court." (Pet. Exs. at Pg ID 125.)

Juarez now petitions this Court for a writ of habeas corpus. (Dkt. 1.) Under the Antiterrorism and Effective Death Penalty Act of 1996, this Court is prohibited from granting that writ where (1) a state court "adjudicated" Juarez's habeas claims "on the merits" and (2) that adjudication did not result in a decision (a) that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States" or (b) that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Michigan Court of Appeals' order denying leave "for lack of merit in the grounds presented" counts as a merits adjudication. *Hynes v. Birkett*, 526 F. App'x 515, 519 (6th Cir. 2013); *Werth v. Bell*, 692 F.3d 486, 491, 493, 494 & n.10 (6th Cir. 2012); *Davis v. Rapelje*, No. 13-13610, 2014 WL 2999281, at *5–7 (E.D. Mich. July 3, 2014) (summarizing relevant case law). The Michigan Supreme Court's order denying leave does not. *Hynes*, 526 F. App'x at 519; *Davis*, 2014 WL 2999281, at *5–7. So the Court asks whether the Michigan Court of Appeals' decision was "contrary to" or an "unreasonable application of" Supreme Court precedent or rested on an unreasonable fact determination. *See* 28 U.S.C. § 2554(d).[1] As the Michigan Court of Appeals' order is unaccompanied by explanation, this Court's task is to consider the possible explanations for the state appellate court's decision and determines if any of them are reasonable. *See Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011).

In her first habeas claim, Juarez asserts prosecutorial misconduct. She says that the prosecutor made irrelevant references to her fiancé being a mob leader and that the prosecutor offered her a less favorable plea deal based on believing that her fiancé was a mob leader. (Pet. at 13.) But in her brief to the Michigan Court of Appeals, Juarez said only that "[a]ffidavits attesting to this fact will be forthcoming from Ms. Juarez's family." (Pet. Exs. at Pg ID 31.) And Juarez's habeas petition does not say that she ever provided these affidavits to the state appellate court; indeed, although her petition recycles her state-court-of-appeals brief, she did not change the assertion that affidavits will be forthcoming (Pet. at 13). The Court finds nothing

---

[1] There is no need to decide whether 28 U.S.C. § 2254(e)(1) applies in this case. *See Davis*, 2014 WL 2999281, at *8 n.1 (explaining that it is unsettled whether § 2254(e)(1) applies if § 2254(d) does).

4

unreasonable about the Michigan Court of Appeals' concluding that there was no prosecutorial misconduct when Juarez offered no evidence to support that claim.

In her second habeas claim, Juarez asserts that this Court should grant her a writ because her trial counsel was ineffective in three ways: (1) failing to object to prosecutorial misconduct, (2) using language that she did not understand, and (3) using "scare" tactics to get her to plead no contest. The first ineffective-assistance claim does not warrant habeas relief for essentially the same reason that stand-alone prosecutorial misconduct claim does not. As for the latter two claims, Juarez says that both of her trial counsel failed to explain the meaning of open murder and failed to explain that, if she took her case to trial, she might be found guilty of first degree murder or second degree murder or manslaughter. (Pet. at 17.) She says that when the trial judge stated that her actions were not "done in such a way that would lower [the offense] to either manslaughter, voluntary or involuntary," her trial counsel failed to explain what the judge meant. (Pet. at 17.) She asserts that in "all communications" with her trial attorneys, she was told that if she was convicted of first degree murder following trial, she would face mandatory life imprisonment; but, says Juarez, she "did not even know what first degree murder meant." (*Id.*) Juarez also points to an emotionally distressed mental state, where she could not think clearly. (Pet. at 15.)

To establish a constitutionally-ineffective-assistance-of-counsel claim, Juarez had to prove to the Michigan Court of Appeals that her trial counsel's performance fell below an objective standard of reasonableness and, but for counsel's errors, she would have proceeded to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). And, because this Court applies AEDPA deference to the Court of Appeals' finding that her claim "lacked merit," Juarez must show that the Michigan

Court of Appeals unreasonably concluded that her counsel's performance was reasonable and that she was not prejudiced. *See Harrington*, 562 U.S. at ---, 131 S. Ct. at 788 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citations omitted)); *Rayner v. Mills*, 685 F.3d 631, 637 (6th Cir. 2012) (interpreting *Harrington* to hold that "when there is no explanation as to *either Strickland* prong, a habeas court must afford *both* prongs AEDPA deference after determining what arguments or theories could have supported the state court's decision." (internal quotation marks and alterations omitted)).[2]

      Juarez has not carried this burden. Other than her own sworn allegations, she cites no evidence that defense counsel scared her into pleading no contest or that she did not understand the benefits and drawbacks of going to trial versus pleading. And the state-court hearing transcripts suggest the contrary. Moreover, even assuming that counsel misadvised Juarez about her options, a proper plea colloquy can "cure[] any misunderstanding [Juarez] may have had about the consequences of [her] plea." *Ramos v. Rogers*, 170 F.3d 560, 565–66 (6th Cir. 1999). Here, the Michigan Court of Appeals could have readily concluded that the colloquies were proper. During the two hearings, Juarez—then 23 years old with a year of college education—indicated that she understood the charges against her, understood the plea agreement, and understood the rights she would be forgoing and the sentences she might receive if she pled guilty. At the second hearing, she repeatedly stated that she had not been threatened or coerced into pleading. The prosecutor and her counsel also told the state trial judge in open court that they were aware of no threats. The Michigan Court of Appeals thus did not unreasonably conclude that Juarez's ineffective-assistance-of-trial-counsel claim lacked merit. *See Ramos*, 170

---

[2] The Court expresses no opinion as to whether two layers of deference would apply to the Michigan Court of Appeals' finding that there was no prejudice.

F.3d at 565–66 ("This court has held that when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice [under *Strickland*] when the court specifically informed [the defendant] that his counsel's advice was incorrect.").

This reasoning also disposes of Juarez's third habeas claim: that her plea was not knowing and voluntary. Even if the contrary conclusion could be reached on the record before the Court, the Michigan Court of Appeals was not unreasonable in concluding that Juarez's plea was intelligent and knowing. *See Meek v. Bergh*, 526 F. App'x 530, 536 (6th Cir. 2013) ("A plea-proceeding transcript that suggests that a plea was made voluntarily and intelligently creates a 'heavy burden' for a petitioner seeking to overturn his plea."); *Carethers v. Wolfenbarger*, 407 F. App'x 14, 17 (6th Cir. 2011) ("While the Warden has the burden to show that [Petitioner's] no-contest plea was voluntary and intelligent, the state generally satisfies its burden by producing a transcript of the state court proceeding. . . . Because the plea hearing transcript is adequate to show that [Petitioner's] plea was voluntary, knowing, and intelligent under the applicable level of deference, this finding is accorded a presumption of correctness." (internal quotation marks omitted)); *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) ("A defendant's statements on the record during a plea colloquy that he or she understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing.").

Finally, Juarez says that her appellate counsel was constitutionally ineffective. (Pet. at 18–20.) The state-court record reflects that Juarez's appointed appellate counsel wrote her a letter stating that he would not file an appeal because there were no appealable issues. (Pet. Exs. at Pg ID 86.) Juarez believed that this was ineffective as she saw three appealable issues: prosecutorial misconduct, ineffective assistance of trial counsel, and her involuntary plea. For the

7

reasons that the Michigan Court of Appeals was not unreasonable to reject those three claims, it was also not unreasonable to find that her ineffective-assistance-of-appellate-counsel claim lacked merit.

The Court DENIES Juarez's petition for a writ of habeas corpus (Dkt. 1). The Court does not believe that reasonable jurists could disagree with this opinion and order or that the issues Juarez has raised "deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and so the Court also DENIES a certificate of appealability.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 5, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson